# DAVIS

*v.*

## LEE CAMP No. 1, C. V.

(*Supreme Court of Appeals of Virginia, Jan. 11, 1894.*)

[18 S. E. Rep. 839.]

Corporations—Camp of Confederate Veterans—Power to Hold and
Sell Lands.*

Under section 1068, Code, every corporation, when not otherwise
provided, has the right "to purchase, hold, and grant estate, real
and personal." The defendant corporation, by special act, has
power to hold land to provide a home for invalid Confederate vet-
erans, provided that it shall not hold, at any one time, more than
500 acres. The government was vested in a board of visitors, who
purchased land. At a regular meeting of the camp, the board of
visitors was authorized to sell a portion of the tract purchased,
if advisable. Subsequently the board of visitors sold the tract in
question, which sale was ratified by both the board and the camp:
*held*, that the board of visitors had full power to make the sale,
and the purchaser obtained a good title.

Appeal from chancery court of Richmond.   The defend-
ant, Davis, purchased of the Lee Camp No. 1, C. V., a
tract of land, and refused to accept a deed on the ground
that the board of visitors who made the sale had no power
to do so.   In a suit brought by the camp for specific per-
formance of the contract, a decree was made, holding said
sale to have been regular, and requiring the defendant to
complete his purchase, from which decree the defendant ap-
pealed.   Affirmed.

*See monographic note on "Corporations (Private)" appended to
Slaughter *v.* Com., 13 Gratt. 767 (Va. Rep. Anno.).

The following is the opinion delivered by W. S. BARTON, Chancellor :

I have carefully considered the record and the arguments of counsel in this case. The arguments are able and elaborate, and have been of much assistance to me. By the general statute of this state, every corporation, in respect to which it is not otherwise provided, has the right to "purchase, hold, and grant estate, real and personal." This corporation, therefore, unless "it is otherwise provided," had the power to purchase, hold, and grant the land, the subject of this controversy, under the general law. There is no provision otherwise. The special act of incorporation, on the contrary, expressly provides that "said association may acquire title to and hold land for the purpose of providing a home," etc., "provided that it shall not hold at any time more than five hundred acres." The only restriction is as to the amount of land it may hold at one time. Section 1070, Code 1887, provides "that no incorporated company shall hold any more real estate than is proper for the purposes for which it is incorporated." The only reason, therefore, for the third section of the charter, seems to have been to prevent any trouble or doubt as to the amount of land to be held at any time, by the statutory provision that 500 acres might be proper for the use of the incorporation. We can well understand that there may have been in the minds of the projectors the idea of a farm, to be cultivated by the inmates of the home for their profit and occupation. In all this there is no other restriction upon the right and power of the corporation to "purchase, hold, and grant" realty, which are given by the general statute, and so affirmed by the charter itself. The purpose referred to in the third section of the charter is simply the general purpose for which the charter was granted. This general purpose or object is fully set forth in article 2 of the by-laws

of the association before its incorporation, and is recited in the preamble of the act of incorporation, passed on March 13, 1884. By article 11 of regulations governing the board of visitors, who seem to be equivalent to a board of directors, the board is authorized to select a site at or near Richmond, to erect the necessary buildings, etc., the title to the property purchased to be in the camp, or lease, etc., till permanent quarters be provided. The corporation having realized a large amount of money through a bazaar held for it by ladies of Richmond, by donations from many persons in different states made to it for its general purposes and objects, determined to purchase a site for the home. Accordingly, in November, 1884, it purchased the land now known as the "Soldiers' Home," in which was included the part, the subject of controversy, which was conveyed to it in fee simple absolute, without any trust, limitation, or restriction of any kind whatsoever. It not being "otherwise provided" by the general statute, the charter of the corporation, or the deed of conveyance, I think the corporation has the full power of alienation, which, by the common law, is incident to the ownership, and is expressly given by the general statute, and by a necessary implication in its charter. Nor does the necessarily limited duration of time in which the object and purposes of the corporation can operate in any wise affect the title in a grantee of the corporation. There is such a thing as a fee simple for alienation and a determinable fee for enjoyment. The limited life of a corporation, whether by express provision in its charter, or by its repeal or forfeiture, does not affect the estate and title of a grantee.

At a regular meeting of the camp in August, 1887, a resolution was adopted, which had been offered at the June meeting and twice laid over, giving authority to the board of

visitors to sell nine acres of the tract across the boulevard from the Soldiers' Home,—the land now the subject of controversy being a part of the nine acres,—should in the judgment of the board such sale be to the interest of the home.    This was like such a resolution at a meeting of stockholders in an ordinary corporation, authorizing the board of directors to sell certain land.    In March, 1889, the board of visitors, at a meeting thereof, appointed a committee of its own body to make the necessary arrangements and conduct the sale, which was done by the committee, its action approved and ratified by the board, and subsequently by the camp.    Under similar circumstances a board of directors would have made the deed of conveyance. It may be questionable whether the board of visitors here could convey a satisfactory title ; but I think there can be no doubt but that the corporation was bound by the action of the board of visitors, whom it had appointed its agent for the very purpose of sale, and, if it had refused to carry out the contract, a specific performance would have been ordered by the court.    I do not think the consequent ratifications made at the suggestion of counsel for the defendants, and in the form prepared by them, were necessary, except so far as to provide for the execution of the proper deeds by the proper officers.    Upon the whole case, therefore, I am of the opinion that the plaintiff had the right to sell the land bought by the defendant, that the deed secures a proper title to the purchasers, and that they ought to be required to fulfill their contract.    A decree may be prepared accordingly.    My conclusion has been reached through much study and thought, but I have not considered it necessary to write out an elaborate opinion,— only to state the general line of reasoning which has led me to the opinion above expressed.

*John Howard*, for appellant.

1 Va Dec—50

· *Christian & Christian* and *Pegram & Stringfellow,* for appellee.

PER CURIAM.    For reasons stated in writing by the chancellor who decided this cause in the said chancery court, which opinion is copied in the record of this cause, there is no error in said decree.